718

DAVIS v. HAMILTON COUNTY, TENN.
No. 5617.

Circuit Court of Appeals, Sixth Circuit.
April 15, 1931.

J. A. Fowler, of Knoxville, Tenn. (H. G. Fowler and S. F. Fowler, both of Knoxville, Tenn., on the brief), for appellant.

Frank Spurlock, of Chattanooga, Tenn. (Will F. Chamlee and Brown & Spurlock, all of Chattanooga, Tenn., on the brief), for appellee.

Before DENISON, MOORMAN, and HICKENLOOPER, Circuit Judges.

MOORMAN, Circuit Judge.

The opinion on the first appeal of this case is reported in (C. C. A.) 278 F. 593. Whether the contract which Davis made with the bridge committee provided, in terms or by implication, that his total compensation was not to exceed 5 per cent. of the expenditures for a bridge costing not in excess of $500,000, was not determined on that appeal. The question decided was that the ratification by the county, after the dismissal of Davis, of contracts made with contractors for the erection of the bridge, did not ratify an unauthorized contract between the bridge committee and Davis. The decision was based on the assumption, presumably indulged by the parties, that the contract with Davis was for 5 per cent. of the cost of the bridge, whatever that might be. Upon the same assumption, we see no reason why a like decision must not be reached on the present case, for, regardless of the power of the county, the committee had no authority to employ Davis to construct a bridge costing more than $500,000, and we have observed no ratification of such action in the record. But, apart from that consideration, we agree with the opinion expressed by the trial court that, in view of all the facts and circumstances, the contract is to be construed as providing for an engineering fee of 5 per cent. of the cost of a bridge not to cost exceeding $500,000.

Having reached the conclusion just stated, it is not necessary to consider whether the county court had the power, under the general statutes of Tennessee, apart from the Private Acts of 1913 and 1917, to contract for the erection of a bridge without limitation as to its cost. Even if the court had this power, it certainly never contemplated exercising it and never authorized the committee to contract with Davis upon such basis. Deciding to construct the bridge under authority of the act of 1913, the court appointed a bridge committee to adopt plans, advertise for bids for, and superintend the erection of, the bridge. In the resolution which the court adopted, it was provided that the total cost of the bridge should not exceed $500,000. The committee advertised for bids, and Davis, seeing the advertisement, wrote the committee for information, and was informed that a bridge was to be built, but that the "cost for structure complete must not exceed $500,000." Subsequently a number of engineers, including Davis, appeared before the committee. At that time Davis submitted a design for a concrete bridge, had extended conferences with the committee, and was repeatedly told that the bridge would have to be constructed within the appropriation of $500,000. Later he submitted designs of bridges which he said could be built within that limit. In April of 1914 he was selected by the committee as its consulting engineer, and, after the War Department had approved the erection of the bridge, prepared complete plans and specifications for its construction. In September he requested a payment on account of services. Replying to this request, the committee referred to its understanding with him that, if it were ascertained that the bridge could not be built within the appropriation, he would be paid a reasonable fee for his serv-

ices rendered up to that time, and then stated that, since it could not be ascertained what the bridge would cost until the bids were in, the advance payment would be made and be considered a part of the proposed reasonable compensation in case the bridge could not be built for the sum named, or, in case it could, as a payment on account of the 5 per cent. commission to which he would be entitled. This payment was accepted by Davis without question or condition. The bids of the contractors having come in, contracts were made with two construction companies, one to construct the concrete portion of the bridge for $342,491, and the other to construct the bascule, or movable span, for $119,-096. This did not take into account certain other expenditures it would be necessary to make, but it was thought by the committee, and seemingly by Davis, that the remaining $38,413 with the savings on an appropriation that the county had made for repairs on another bridge would be sufficient to take care of these further expenses.

Up to October 26th no formal contract had been made with Davis. On that date such a contract was signed by the committee. It provided that the county should pay Davis a sum equal to 5 per cent. of the total cost of all work involved in the construction and completion of the bridge; that $3,000 on account should be paid when the preliminary drawings were submitted to, and accepted by, the committee; that an additional $5,000 should be paid not later than October 27th; that, upon the award of any contract for construction, the estimated amount of the full commissions should be determined, and one-half thereof, less total previous payments, paid; and that the balance, 2½ per cent., should be paid in monthly installments according to monthly estimates of the work done. The contracts for construction were let on October 31st and November 25th. The $5,000 due Davis on October 27th having been paid, on December 1st the committee sent to him two warrants totaling $3,539.67 as the amount then due him. This amount was arrived at, as he was advised, by computing his commissions on the contracts that had been let ($461,587), taking one-half thereof ($11,539.67), and deducting therefrom the amounts previously paid. Davis accepted the warrants and cashed them without question. Thereafter, until he was discharged, he was paid commissions of 2½ per cent. on the monthly estimates of the contractors. As work on the bridge progressed, difficulties were encountered, additional borings were required, and it was found that

the bridge would cost a great deal more than had been thought. The committee, later becoming dissatisfied with Davis' services, dismissed him before it had exhausted its appropriation.

The nature of this action is one in damages for breach of contract. The critical question, in our view, is what was the essence of the contract—did it provide for compensation on the basis of 5 per cent. of the cost of construction, whatever it might be, or on the basis of 5 per cent. of a cost not to exceed $500,000? The contract in terms did not limit the compensation to any definite amount; it provided for the payment of "five per cent. of the total cost * * * of all work involved in the construction and completion of the said bridge." The bridge was not described other than as "a new bridge" across the Tennessee river at the foot of Market street in Chattanooga, to be erected on a site "already seized or to be hereafter seized." This referred, of course, to a bridge which Davis and the committee believed would not cost over $500,000, and for which the committee had said to him it could not expend more than that amount. It is true that the contract might have provided for a fixed fee or for commissions on expenditures not exceeding a fixed amount. It did not, but both parties in their dealings with each other construed it as a contract for commissions for the construction of a bridge not to cost more than $500,000. In the response to the first inquiry that Davis made, he was told that the cost of the "structure complete must not exceed" that amount. Bids were considered and accepted by the committee with this maximum authority constantly in mind, and always after consultation with Davis. Before the formal contract was entered into, he was given a payment on account, and was informed that, if it should be ascertained that the bridge could not be built within the appropriation, he would only be paid for services rendered to that time, but, if it could be built within the appropriation, the payment then being made should be on account of the 5 per cent. commission to which he would be entitled. His contract with the committee in its first paragraph referred to the resolution of the county court of January, 1914, limiting the committee to a "total cost" of $500,000. Both he and the committee contemplated at that time the erection of a bridge within that authority. In the light of that understanding and purpose, and lacking any intimation in its terms of an intention to expend more, the contract is to be construed, we think, as embodying the pur-

pose of the parties to fix the maximum compensation at 5 per cent. of the authorized cost. Nelson v. Ohio Cultivator Co., 188 F. 620 (6 C. C. A.); Canadian Nat. Ry. Co. v. Geo. M. Jones Co., 27 F.(2d) 240 (6 C. C. A.).

The judgment is affirmed.